585 F.2d 978
 UNITED STATES of America ex rel. Carl B. HORNELL and Mary A.
Hornell, Plaintiffs-Appellants,
v.
ONE 1976 CHEVROLET STATION WAGON, SERIAL NO. 1L45U6S107585,
Navajo Motors, a New Mexico Corporation, and the
Merchants Bank, a New Mexico
Corporation, Defendants-Appellees.
 No. 77-1047.
 United States Court of Appeals,
Tenth Circuit.
 Argued May 10, 1978.
Decided Oct. 30, 1978.
 
 Robert C. Ericson, Window Rock, Ariz. (William M. Celestre, Window Rock, Ariz., on the brief), for plaintiffs-appellants.
 Richard Winterbottom and Peter J. Adang, Albuquerque, N. M., for defendants-appellees.
 Before SETH, Chief Judge, and LEWIS and DOYLE, Circuit Judges.
 LEWIS, Circuit Judge.
 
 
 1
 This is an appeal from a judgment entered in the United States District Court for the District of New Mexico pursuant to Rule 12(c), Fed.R.Civ.P., dismissing plaintiffs' two-part complaint. The first claim stated in the complaint is a Qui tam action based on 25 U.S.C. §§ 201 and 264 for a monetary penalty and forfeiture of a Chevrolet station wagon allegedly sold to plaintiffs on an Indian reservation in violation of federal licensing requirements. The second claim is for statutory damages for failure to make proper disclosures under the Truth in Lending Act, 15 U.S.C. § 1601, et seq. We affirm the dismissal of the second claim and that portion of the first claim seeking forfeiture. We hold, however, that plaintiffs have properly stated a claim for the monetary penalty under § 264 and vacate the dismissal thereof.
 
 
 2
 On November 21, 1975, plaintiffs visited the Navajo Motors (Navajo) showroom in Gallup, New Mexico. Mr. Otero, a salesman at Navajo, waited on the plaintiffs and filled out a credit application for them when they displayed an interest in a Chevrolet station wagon. Following a conversation about the car and credit possibilities Mr. Otero suggested that the plaintiffs go to lunch and come back later in the afternoon to see if their credit had been approved. That afternoon Mr. Otero obtained approval of credit from the Merchants Bank. He also prepared a retail installment contract and an estimate on plaintiffs' trade-in vehicle. The plaintiffs, however, did not return as expected. The following morning Mr. Otero obtained permission from his sales manager to deliver the station wagon to plaintiffs' home within the Navajo Indian reservation at Ft. Defiance, Arizona. Following Mr. Otero's arrival, the plaintiffs agreed to purchase the car, and they executed the retail installment contract at their home.
 
 I.
 
 3
 Plaintiffs have asserted a claim under 25 U.S.C. § 264,[1] which is part of a statutory scheme designed to protect Indians living on reservations from unscrupulous trade practices. See, Rockbridge v. Lincoln, 9 Cir., 449 F.2d 567. It provides sanctions against non-Indians who attempt to introduce goods for trade on a reservation without first obtaining a license from the Commissioner of Indian Affairs. By the terms of the statute, such a person "shall . . . be liable to a penalty of $500." This penalty may be recovered through a Qui tam action brought by a private informer pursuant to 25 U.S.C. § 201.[2] United States ex rel. Marcus v. Hess, 317 U.S. 537, 541 n.4, 63 S.Ct. 379, 87 L.Ed. 443. The informer is entitled to one half of the penalty, and the other half is paid to the United States.
 
 
 4
 Navajo's assertion that § 264 only applies in "those situations where the merchant makes the first contact with the Indian on the reservation" is without merit. The § 264 sanctions extend to any non-Indian "who shall attempt . . . to introduce goods, or to trade therein" on a reservation. The complaint states that a Navajo Motors salesman drove a Chevrolet station wagon to the plaintiffs' residence within the borders of a Navajo Indian Reservation, and while there without a license "offered to sell and sold the vehicle to plaintiffs." This alleged behavior falls squarely within the scope of commercial activities proscribed by the statute. The preliminary negotiations conducted the previous day between the parties in Gallup created no binding obligations and have no bearing on the applicability of § 264. The subject vehicle was as yet unsold at the time it was introduced onto the reservation. Navajo's further attempt to restrict application of the statute to those merchants who frequent the reservation with several items of merchandise in order to conduct a regular course of trade are equally unfounded in both the language employed by Congress and the social policy reflected in Title 25. The activity here alleged raises sufficient possibilities of overreaching and exploitation to invoke the protective sanctions of § 264. See, Rockbridge v. Lincoln, supra, at 573-75. The order dismissing plaintiffs' claim for the § 264 monetary penalty is accordingly vacated.
 
 II.
 
 5
 We reach a different result, however, with respect to plaintiffs' claim for forfeiture of the subject vehicle. The Supreme Court has articulated the general rule that "(f)orfeitures are not favored; they should be enforced only when within both letter and spirit of the law." United States v. One Ford Coach, 307 U.S. 219, 226, 59 S.Ct. 861, 865, 83 L.Ed. 1249. Forfeiture in this instance would violate both the letter and spirit of federal Indian legislation, and plaintiffs' action therefor was properly dismissed below. 25 U.S.C. § 264 states that a violator "shall forfeit all merchandise offered for sale to the Indians or found in his possession, and shall moreover be liable to a penalty of $500." Plaintiffs seek to invoke the forfeiture provisions of § 264 in their own behalf by virtue of 25 U.S.C. § 201 which authorizes a Qui tam action for "(a)ll penalties" accruing under Title 25. The "penalty" of $500 provided in § 264 is distinct, however, from the forfeiture of merchandise. The latter is not a "penalty," subject to claims by a private Qui tam litigant. By the Act of July 31, 1882, ch. 360, 22 Stat. 179, Congress amended what is now § 264 by replacing the clause "forfeit and pay the sum of $500" with the clause "be liable to a penalty of $500." The amended language distinguishes the forfeiture of merchandise from the monetary "penalty." We will not ascribe a meaning to § 201 which would effectively dissolve this distinction and expand the definition of "penalty" beyond the scope reflected in the text of § 264.
 
 
 6
 Our result here is supported by the canon of statutory construction that federal Indian legislation is to be construed where possible in favor of the Indians. Squire v. Capoeman, 351 U.S. 1, 6-7, 76 S.Ct. 611, 100 L.Ed. 883. At the time suit was brought, the subject vehicle had already been sold to Indians living on the reservation. Plaintiffs assert, however, that "the formal declaration of the forfeiture relates back to the time the station wagon was offered for sale and avoids the sale to appellants and the subsequent assignment to Merchants Bank." Were we to accept this position, we would jeopardize the possessory rights of reservation Indians to purchased goods which were offered to them in contravention of § 264, since the goods would be subject to forfeiture irrespective of a subsequent good faith purchase. Such a doctrine would violate the spirit and intent of § 264, which was enacted for the Indians' economic protection. Plaintiffs' claim of forfeiture must consequently fail.
 
 III.
 
 7
 The retail installment contract executed by plaintiffs contains on its reverse side the following acceleration clause:
 
 
 8
 In the event of default by the Buyer hereunder, the entire unpaid balance of the Total of Payments shall, at the option of Holder, become immediately due and payable. . . .
 
 
 9
 The plaintiffs assert that this clause imposes a default, delinquency or similar charge, and was thus required to be disclosed on the front of the contract pursuant to 15 U.S.C. § 1638(a)(9) and 12 C.F.R. §§ 226.8(a)(1) and 226.8(b)(4).
 
 
 10
 After the briefs in the present case were filed, the decision of this court in Begay v. Ziems Motor Co., 550 F.2d 1244, was published, which is dispositive of this issue. In Begay we adopted the position of the Fifth Circuit in Martin v. Commercial Securities Co., Inc., 539 F.2d 521, and held that an acceleration clause does not contain an additional "charge" and therefore need not be disclosed as such. The dismissal of plaintiffs' claim for statutory damages for failure to disclose is accordingly affirmed.
 
 
 11
 All other appellate contentions have been considered and are without merit.
 
 
 12
 Affirmed in part; reversed in part, and remanded. No costs allowed.
 
 
 
 [1]
 25 U.S.C. § 264. Trading without a license
 Any person other than an Indian of the full blood who shall attempt to reside in the Indian country, or on any Indian reservation, as a trader, or to introduce goods, or to trade therein, without such license (as provided for in §§ 261 et seq.), shall forfeit all merchandise offered for sale to the Indians or found in his possession, and shall moreover be liable to a penalty of $500 . . . .
 
 
 [2]
 25 U.S.C. § 201. Penalties; how recovered
 All penalties which shall accrue under this title shall be sued for and recovered in an action in the nature of an action in debt, in the name of the United States, before any court having jurisdiction of the same, in any State or Territory in which the defendant shall be arrested or found, the one half to the use of the informer and the other half to the use of the United States, except when the prosecution shall be first instituted on behalf of the United States, in which case the whole shall be to their use.